1

2

3

4

5

6

7

8       **IN THE UNITED STATES DISTRICT COURT**

9       **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   JAMES HERBERT LOCKHART, JR.,        No. 2:14-CV-1145-JAM-CMK

12             Plaintiff,

13        vs.                          FINDINGS AND RECOMMENDATIONS

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
              Defendant.
16
     _____/
17

18             Plaintiff, who is proceeding with retained counsel, brings this action under

19   42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security.

20   Pending before the court are plaintiff's motion for summary judgment (Doc. 13) and defendant's

21   cross-motion for summary judgment (Doc. 14).

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

# I.  PROCEDURAL HISTORY

Plaintiff applied for social security benefits on August 31, 2010.  In the application, plaintiff claims that disability began on August 22, 2005.  Plaintiff's claim was initially denied.  Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on September 11, 2012, before Administrative Law Judge ("ALJ") Trevor Skarda.   In a January 10, 2013, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

> 1.   The claimant has the following severe impairment(s): degenerative disc disease, borderline intellectual functioning, and anxiety disorder.
>
> 2.   The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations.
>
> 3.   The claimant has the following residual functional capacity: the claimant can perform light work except: he can never climb ropes, ladders, or scaffolds; he can occasionally balance with a hand-held assistive device; he can occasionally stoop, kneel, crouch, and crawl; he can occasionally climb ramps and stairs; he is limited to jobs that can be performed while using a hand-held assistive device for uneven terrain, prolonged ambulation, and at all times while standing and walking; he must avoid concentrated exposure excessive vibration, operational control of dangerous moving machinery, and unprotected heights; he is limited to simple, routine, and repetitive tasks; he is limited to work in a low-stress job, which is defined as requiring only occasional decision-making and only occasional changes in the work setting.
>
> 4.   Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

After the Appeals Council declined review on March 20, 2014, this appeal followed.

# II.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521

1   (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to

2   support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole,

3   including both the evidence that supports and detracts from the Commissioner's conclusion, must

4   be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones

5   v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's

6   decision simply by isolating a specific quantum of supporting evidence.  See Hammock v.

7   Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative

8   findings, or if there is conflicting evidence supporting a particular finding, the finding of the

9   Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

10  Therefore, where the evidence is susceptible to more than one rational interpretation, one of

11  which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

12  Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

13  standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

14  Cir. 1988).

15

16                                     **III.  DISCUSSION**

17          In his motion for summary judgment, plaintiff argues that the ALJ failed to

18  provide sufficient reasons for rejecting the opinions of  Drs. Baron, Van Kirk, Wakefield, and

19  Chellsen.  The weight given to medical opinions depends in part on whether they are proffered by

20  treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d 821, 830-31

21  (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who

22  has a greater opportunity to know and observe the patient as an individual, than the opinion of a

23  non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996);

24  Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the opinion of

25  a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

26  / / /

1    In addition to considering its source, to evaluate whether the Commissioner

2  properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are

3  in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an

4  uncontradicted opinion of a treating or examining medical professional only for "clear and

5  convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.

6  While a treating professional's opinion generally is accorded superior weight, if it is contradicted

7  by an examining professional's opinion which is supported by different independent clinical

8  findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035,

9  1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be

10  rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester,

11  81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of

12  the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a

13  finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

14  legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

15  professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional,

16  without other evidence, is insufficient to reject the opinion of a treating or examining

17  professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

18  conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

19  1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion);

20  see also Magallanes, 881 F.2d at 751.

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

4

1      A.    <u>**Dr. Baron**</u>

2           Plaintiff argues: "The ALJ failed to mention, let alone address or weigh, the

3   opinion of Dr. Baron (treating physician) and failed to weigh the physical evaluation findings."

4   Specifically, plaintiff asserts that the ALJ failed to discuss Dr. Baron's opinion contained in a

5   physical functional capacity evaluation at Exhibit 13F.  Regarding this exhibit, the ALJ stated:

6           . . .He [plaintiff] had a painful, diminished range of motion in the back,
            reduced muscle strength on the left side of his body, and an inability to
7           kneel during a physical therapy session held on April 4, 2012 (Exhibit
            13F, 14). . . .

8                               * * *

9
            . . .Multiple diagnostic images showed a few positive findings throughout
10          the claimant's spine, and relevant positive clinical signs were detected
            during multiple physical examinations (Exhibits 3F, 8F, 12F, 13F, and
11          15F). . . .

12  According to plaintiff: "These references do not indicate that the ALJ realized that the report was

13  actually an opinion as opposed to a progress note."  Plaintiff concludes that a remand to the

14  agency is necessary so that the evidence contained in Exhibit 13F "can be 'weighed' the first

15  time."

16          Exhibit 13F consists of medical records from San Joaquin General Hospital

17  supplied by plaintiff's counsel covering the period June 13, 2011, through May 15, 2012.  These

18  records largely consist of Dr. Baron's handwritten treatment and progress notes and reflect

19  plaintiff's subjective complaints as well as the doctor's objective observations.  They also

20  contain physical therapy progress notes.

21          The court has reviewed Exhibit 13F in detail and finds no indication of any non-

22  conclusory opinions expressed by Dr. Baron (or the physical therapist for that matter), let alone

23  any opinions which are supported by reference to specific objective clinical findings.  The parties

24  both refer to a largely unintelligible handwritten May 15, 2012, progress report in which the

25  doctor notes: "Spinal cord injury / scoliosis w/ spondylolisthesis / . . . pt. disabled unable to lift

26  & do any physically strenuous active or repetitive motion . . .of lumbar spine."  Contrary to

plaintiff's characterization, the court finds that this record reflects, at best, a minimally supported

conclusory opinion.  In particular, Dr. Baron does not provide any detailed assessment of

plaintiff's functional capacity, such as his ability to stand, walk, sit, etc.  While it appears that Dr.

Baron opined that plaintiff cannot perform strenuous motions involving the lumbar spine, the

doctor does not indicate how, if at all, this limitation affects plaintiff's functional capacity in

other physical areas.  Moreover, the doctor has not noted any specific objective findings – such

as range of motion findings or the like – supporting the general statement "pt. disabled."[1]

       Because Dr. Baron has not expressed any non-conclusory medical opinion

supported by reference to specific objective findings, the ALJ did not commit error regarding

evaluation of records from this source.

**B.**    **Dr. Van Kirk**

       As to Dr. Van Kirk, the ALJ stated:

> Dale H. Van Kirk, M.D., a State agency medical consultant, conducted an
> orthopedic consultative examination on October 29, 2012.  Dr. Van Kirk
> observed that the claimant was pleasant.  The claimant walked and
> balanced with a cane.  He sat comfortably during the examination.  He
> could get on and off the examination table without difficulty.  His balance
> was abnormal and he almost fell during the examination.  He was unable
> to squat or perform tandem walking.  The range of motion in his lumbar
> spine was diminished.  The straight leg raising test was negative.  The
> motor strength and sensory functioning of his left lower extremity were
> reduced.  He had clonus of the left ankle.  Dr. Van Kirk diagnosed status
> post blunt trauma to the back, weakness of the left lower extremity with
> poor balance, and clonus of the left ankle (Exhibit 3F).
>
>      \* \* \*
>
> Dr. Van Kirk . . . opined that the claimant could lift and carry 20 pounds
> frequently and 50 pounds occasionally.  The claimant could stand and
> walk for 4 hours in an 8-hour workday, 1 hour at a time.  He could sit for 6
> hours in an 8-hour workday, 1 hour at a time.  He needed to use a cane for
> ambulation.  He could never balance, crouch, crawl, or climb ladders or
> scaffolds.  He could occasionally stoop, kneel, and climb ramps and stairs.
> He was limited to occasional operation of foot controls with the left foot.
> He could never tolerate exposure to unprotected heights and temperature
> extremes.  He could occasionally tolerate exposure to humidity and

---

[1]    In any event, whether plaintiff is disabled is a legal question, not a medical one.

wetness. He could frequently tolerate exposure to moving mechanical parts, pulmonary irritants, and vibrations. He could tolerate moderate noise (Exhibit 15F).

Dr. Van Kirk's opinion is given little probative weight because it is inconsistent with the medical evidence of record, which indicates that the claimant indeed has some serious physical limitations, even though they are not debilitating. Multiple diagnostic images showed a few positive findings throughout the claimant's spine, and relevant positive clinical signs were detected during multiple physical examinations (Exhibits 3F, 8F, 12F, 13F, and 15F). In addition, Dr. Van Kirk did not adequately consider the claimant's subjective complaints, which reflect some physical difficulties. The claimant can carry out no more than light household chores (Exhibits 3E, 4E, 3F, 11F, 15F, and hearing testimony).

Plaintiff argues: "The ALJ's rationale for discrediting Dr. Van Kirk's opinion does not make sense and therefore does not rise to the level of specific and legitimate reasons for discrediting the opinion of the Agency's own examining expert."

The court does not agree. In an analysis beneficial to plaintiff, the ALJ concluded that Dr. Van Kirk's opinion was not entitled to significant weight because it was _less_ restrictive than the evidence as a whole indicated. Specifically, the ALJ stated that Dr. Van Kirk's opinion did not account for plaintiff's serious physical limitations or subjective complaints, both of which indicate an ability to perform no more than light work.

According to plaintiff, the ALJ erred by failing to consider those opinions offered by Dr. Van Kirk which were _more_ restrictive than the assessed residual functional capacity. Specifically, plaintiff points to Dr. Van Kirk's opinions with respect to standing, walking, and sitting. In these areas, Dr. Van Kirk opined as follows:

| | |
|---|---|
| Standing | - 4 hours in an 8-hour workday, 1 hour at a time |
| Walking | - 4 hours in an 8-hour workday, 1 hour at a time<br>- Must use a cane for ambulation |
| Sitting | - 6 hours in an 8-hour workday, 1 hour at a time |

Plaintiff states that, contrary to the ALJ's finding that plaintiff could perform light work (which involves standing/walking for six hours), Dr. Van Kirk opined that plaintiff can only stand/walk

1  for four hours and that the ALJ erred by not providing reasons for rejecting this more limiting

2  opinion.  Plaintiff also argues that the ALJ erred by not providing reasons for rejecting Dr. Van

3  Kirk's opinion that plaintiff must alternate positions every hour when standing, walking, or

4  sitting.  Defendant essentially concedes that the ALJ failed to discuss these opinions but argues

5  that any error was harmless.

6          The Ninth Circuit has applied harmless error analysis in social security cases in a

7  number of contexts.  For example, in Stout v. Commissioner of Social Security, 454 F.3d 1050

8  (9th Cir. 2006), the court stated that the ALJ's failure to consider uncontradicted lay witness

9  testimony could only be considered harmless ". . . if no reasonable ALJ, when fully crediting the

10 testimony, could have reached a different disability determination." Id. at 1056; see also Robbins

11 v. Social Security Administration, 466 F.3d 880, 885 (9th Cir. 2006) (citing Stout, 454 F.3d at

12 1056).  Similarly, in Batson v. Commissioner of Social Security, 359 F.3d 1190 (9th Cir. 2004),

13 the court applied harmless error analysis to the ALJ's failure to properly credit the claimant's

14 testimony.  Specifically, the court held:

15              However, in light of all the other reasons given by the ALJ for
              Batson's lack of credibility and his residual functional capacity, and in
16             light of the objective medical evidence on which the ALJ relied there was
              substantial evidence supporting the ALJ's decision.  Any error the ALJ
17             may have committed in assuming that Batson was sitting while watching
              television, to the extent that this bore on an assessment of ability to work,
18             was in our view harmless and does not negate the validity of the ALJ's
              ultimate conclusion that Batson's testimony was not credible.
19
              Id. at 1197 (citing Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990)).
20

21 In Curry, the Ninth Circuit applied the harmless error rule to the ALJ's error with respect to the

22 claimant's age and education.  The Ninth Circuit also considered harmless error in the context of

23 the ALJ's failure to provide legally sufficient reasons supported by the record for rejecting a

24 medical opinion.  See Widmark v. Barnhart, 454 F.3d 1063, 1069 n.4 (9th Cir. 2006).

25 / / /

26 / / /

1         The harmless error standard was applied in <u>Carmickle v. Commissioner</u>, 533 F.3d

2    1155 (9th Cir. 2008), to the ALJ's analysis of a claimant's credibility.  Citing <u>Batson</u>, the court

3    stated:  "Because we conclude that . . . the ALJ's reasons supporting his adverse credibility

4    finding are invalid, we must determine whether the ALJ's reliance on such reasons was harmless

5    error."  <u>See id.</u> at 1162.  The court articulated the difference between harmless error standards set

6    forth in <u>Stout</u> and <u>Batson</u> as follows:

7               . . . [T]he relevant inquiry [under the <u>Batson</u> standard] is not
        whether the ALJ would have made a different decision absent any error. . .

8            it is whether the ALJ's decision remains legally valid, despite such error.
        In <u>Batson</u>, we concluded that the ALJ erred in relying on one of several

9            reasons in support of an adverse credibility determination, but that such
        error did not affect the ALJ's decision, and therefore was harmless,

10           because the ALJ's remaining reasons *and ultimate credibility
        determination* were adequately supported by substantial evidence in the

11           record.  We never considered what the ALJ would do if directed to
        reassess credibility on remand – we focused on whether the error impacted

12           the *validity* of the ALJ's decision.  Likewise, in <u>Stout</u>, after surveying our
        precedent applying harmless error on social security cases, we concluded

13           that "in each case, the ALJ's error . . . was inconsequential to the *ultimate
        nondisability determination*."

14

15              Our specific holding in <u>Stout</u> does require the court to consider
        whether the ALJ would have made a different decision, but significantly,
        in that case the ALJ failed to provide *any reasons* for rejecting the

16           evidence at issue.  There was simply nothing in the record for the court to
        review to determine whether the ALJ's decision was adequately supported.

17

18        <u>Carmickle</u>, 533 F.3d at 1162-63 (emphasis in original; citations omitted).

19   Thus, where the ALJ's errs in not providing any reasons supporting a particular determination

20   (i.e., by failing to consider lay witness testimony), the <u>Stout</u> standard applies and the error is

21   harmless if no reasonable ALJ could have reached a different conclusion had the error not

22   occurred.  Otherwise, where the ALJ provides analysis but some part of that analysis is flawed

23   (i.e., some but not all of the reasons given for rejecting a claimant's credibility are either legally

24   insufficient or unsupported by the record), the <u>Batson</u> standard applies and any error is harmless

25   if it is inconsequential to the ultimate decision because the ALJ's disability determination

26   nonetheless remains valid.

1    Defendant contends that, in light of the opinions of Drs. Thomas and Schwartz –

2  both agency physicians whose opinions were consistent with the ALJ's residual functional

3  capacity determination – the "error was inconsequential to the determination" and that remanding

4  for further consideration of Dr. Van Kirk's opinions "would not alter or change the outcome of

5  the case."  As a preliminary matter, the court disagrees with defendant's statement of the

6  applicable harmless error standard.  Defendant is citing the Batson standard, which applies when

7  the ALJ provides some analysis of the evidence at issue, but some part of the analysis is flawed.

8  In this case, however, the ALJ failed to provide any analysis of Dr. Van Kirk's sit/stand/walk

9  limitations.  Given the lack of any analysis of these limitations, the Stout standard applies and the

10  error is harmless ". . . if no reasonable ALJ, when fully crediting the testimony, could have

11  reached a different disability determination."  Stout, 454 F.3d at 1056.

12    Under this standard, the court cannot say that the error was harmless, especially

13  given that it ultimately led to an adverse disability finding.  See Widmark, 454 F.3d at 1069 n.4.

14  In other words, should a reasonable ALJ fully credit the sit/stand/walk limitations opined by Dr.

15  Van Kirk, particularly the requirement to alternate positions every hour, it is possible that

16  plaintiff would be found to be disabled.  The court finds that a remand is necessary to allow the

17  agency to evaluate all of Dr. Van Kirk's opinions.

18    **C.    Drs. Wakefield and Chellsen**

19    Regarding Dr. Wakefield, the ALJ stated:

20    James A. Wakefield, Jr., Ph.D., a State agency medical consultant,
      conducted a psychological consultative examination on October 24, 2012.
21    Dr. Wakefield observed that the claimant was adequately groomed and
      dressed.  The claimant was cooperative and talkative.  He did not have
22    difficulty conversing with the examiner.  He exhibited decreased motor
      activity and walked with a cane.  His affect was anxious but euthymic.
23    His associations were generally direct and coherent.  He had deficient
      attention, concentration, and memory.  He could perform only simple
24    mental calculations.  His abstraction was generally concrete.  His
      judgment was deficient.  His full scale IQ was measured to be 62, which
25    was in the deficient range.  Psychometric tests also indicated deficient
      memory.  Dr. Wakefield diagnosed borderline intellectual functioning
26    provisionally, anxiety disorder, organic mental disorder, and polysubstance

dependence in remission. Dr. Wakefield further assigned the claimant a GAF score of 55 (Exhibit 14F).

* * *

Dr. Wakefield . . . opined that the claimant could perform simple, repetitive tasks. The claimant had difficulty with complex tasks. He was capable of interacting with coworkers, supervisors, and the public at a minimally acceptable level. His ability to reason and make occupational, personal, and social decisions in his best interest was deficient. His pace and verbal concentration were deficient. His persistence and visual concentration were adequate. In terms of physical functioning, Dr. Wakefield opined that the claimant could lift up to 20 pounds occasionally and carry up to 10 pounds occasionally. The claimant could stand for 3 hours in an 8-hour workday, 1 hour at a time. He could walk for 2 hours in an 8-hour workday, 1 hour at a time. He could sit for 2 hours in an 8-hour workday, 15 minutes at a time. He needed to use a cane for ambulation. He could never stoop, kneel, crouch, or climb ladders or scaffolds. He could occasionally balance and climb stairs and ramps. He was limited to no reaching with the left upper extremity. He was also limited to occasional handling, fingering, feeling, pushing, and pulling with the left upper extremity. He was limited to no operation of foot controls with the left lower extremity. He could never tolerate exposure to unprotected weights or moving mechanical parts. He could occasionally operate a motor vehicle. He could tolerate loud noise (Exhibit 14F).

Dr. Wakefield's opinion regarding the claimant's mental functioning is given substantial probative weight because it is consistent with the mental health evidence of record, which indicates that the claimant's mental symptoms are not debilitating. The claimant was observed to have good grooming and cooperative behaviors during the mental consultative examination conducted on July 5, 2012, and October 24, 2012 (Exhibits 11F and 14F). In addition, Dr. Wakefield's opinion is consistent with the general absence of evidence of mental health treatment in the record, which indicates that the claimant's mental conditions are not debilitating. Moreover, Dr. Wakefield's opinion is consistent with the claimant's admitted daily living and social activities, which indicate considerable mental capacity. The claimant is independent in self-care and can carry out light household chores. He can shop at stores, go to church, and go out alone, which suggests that he can be around people. He spends time with others once or twice a week, which indicates adequate social functioning. He reports having no problems getting along with others. He admittedly can follow written and spoken instructions, which indicates some concentration ability. His daily routine consists of watching television for long periods and reading, both of which require some concentration. He also has the ability to drive, which requires a considerable degree of concentration (Exhibits 3E, 4E, 3F, 11F, 14F, 15F, and hearing testimony). Furthermore, Dr. Wakefield personally observed and examined the claimant, which augments the reliability of the opinion. In addition, Dr. Wakefield's opinion is not contradicted by the opinion of any treating psychiatrist or psychologist. However, the weight assigned to Dr.

Wakefield's opinion concerning the claimant's concentration ability is reduced because Dr. Wakefield used vague terms such as "deficient."

Dr. Wakefield's opinion regarding the claimant's physical functioning is given little probative weight because physical impairments are outside the expertise of a psychologist.  In addition, Dr. Wakefield did not conduct a detailed physical examination and his opinion was thus not based on objective clinical signs.

Regarding Dr. Chellsen, the ALJ sated:

The claimant was referred by his representative to John A. Chellsen, Ph.D., who examined the claimant on July 5, 2012.  Dr. Chellsen observed that the claimant was adequately groomed.  The claimant walked slowly with a cane.  His demeanor was pleasant.  His associations were intact, linear, and coherent.  His affect was mobile in range, normal in intensity, and appropriate in content.  He showed adequate judgment.  His full scale IQ was measured to be 70.  Dr. Chellsen diagnosed post-traumatic stress disorder provisionally and borderline intellectual functioning.  Dr. Chellsen further assigned the claimant a Global Assessment of Functioning (GAF) score of 60 (Exhibit 11F).

* * *

Dr. Chellsen, who conducted the psychological consultative examination of July 5, 2012, opined that the claimant had "mild personal, moderate social, and marked occupational limitations."  The claimant also had a "borderline" ability to maintain pace and quality.  Dr. Chellsen further opined that it was "doubtful" whether the claimant would be "capable of tolerating or adapting to even simple part-time work stressors or routines" (Exhibit 11F).

Dr. Chellsen's opinion is given little probative weight because it is vague.  Dr. Chellsen's opinion does not provide a clear definition of terms such as "mild," "moderate," "marked," "personal," "occupational," "borderline," and "doubtful."  As a result, it is unclear as to what the claimant's limitations are.  In addition, Dr. Chellsen's opinion is inconsistent with the mental health evidence of record, which indicates that the claimant's mental symptoms are not debilitating.  The claimant was observed to have good grooming and cooperative behaviors during the mental consultative examination conducted on July 5, 2012, and October 24, 2012 (Exhibits 11F and 14F).  Moreover, Dr. Chellsen's opinion is inconsistent with the general absence of evidence of mental health treatment in the record, which indicates that the claimant's mental conditions are not debilitating.  Furthermore, Dr. Chellsen's opinion is inconsistent with the claimant's admitted daily living and social activities, as described above, which indicate considerable mental capacity (Exhibits 3E, 4E, 3F, 11F, 14F, 15F, and hearing testimony).

///

1
2
3
4

> In response to the consultative examination reports dated October 24, 2012, and October 29, 2012, the claimant's representative argued in a letter dated November 26, 2012, that Dr. Chellsen's assessment of the claimant's functional limitations would preclude the claimant from all work.  However, as discussed above, Dr. Chellsen's assessment is ambiguous and is inconsistent with other evidence in the record. . . .

5   Plaintiff argues that the ALJ erred in finding that Dr. Wakefield's opinion

6   regarding plaintiff's concentration was rendered vague by use of the word "deficient."

7   According to plaintiff, the ALJ should have recontacted Dr. Wakefield for clarification of his

8   opinion.

9   The ALJ has an independent duty to fully and fairly develop the record and assure

10   that the claimant's interests are considered.  See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th

11   Cir. 2001).  When the claimant is not represented by counsel, this duty requires the ALJ to be

12   especially diligent in seeking all relevant facts.  See id.  This requires the ALJ to "scrupulously

13   and conscientiously probe into, inquire of, and explore for all the relevant facts."  Cox v.

14   Califano, 587 F.2d 988, 991 (9th Cir. 1978).   Ambiguous evidence or the ALJ's own finding that

15   the record is inadequate triggers this duty.  See Tonapetyan, 242 F.3d at 1150.  The ALJ may

16   discharge the duty to develop the record by subpoenaing the claimant's physicians, submitting

17   questions to the claimant's physicians, continuing the hearing, or keeping the record open after

18   the hearing to allow for supplementation of the record.  See id. (citing Tidwell v. Apfel, 161 F.3d

19   599, 602 (9th Cir. 1998)).

20   Here, the ALJ indicated that Dr. Wakefield's opinion regarding plaintiff's

21   concentration ability is vague because he used the word "deficient."  Thus, the ALJ himself

22   acknowledged that this evidence is ambiguous.  Defendant agrees by stating that the "ALJ

23   properly recognized" that the word "deficient," standing alone as it does in Dr. Wakefield's

24   opinion, is vague.  Given that the ALJ cited no other reasons for discounting Dr. Wakefield's

25   opinion regarding concentration, the court agrees with plaintiff that a remand is appropriate to

26   allow further development of the record in this regard.

As to Dr. Chellsen, plaintiff argues that the ALJ erred in concluding that use of terms such as "mild," "moderate," and "marked" rendered the doctor's opinions vague. Regardless of whether the use of these terms were vague, the court finds that the ALJ's analysis is based on other reasons supported by the record.  As the ALJ noted, in addition to the use of what were characterized as vague terms, Dr. Chellsen's opinion is inconsistent with other mental health evidence, as well as observations of plaintiff made during the consultative examinations on July 5, 2012, and October 24, 2012.  Moreover, the limitations opined by Dr. Chellsen are not consistent with the absence of evidence of mental health treatment.  Finally, as the ALJ noted, Dr. Chellsen's opinions are inconsistent with plaintiff's activities of daily living which do not reveal disabling mental health problems.  Given these additional reasons for rejecting the opinions of Dr. Chellsen, the court finds no error in the ALJ's analysis.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**IV.  CONCLUSION**

For the foregoing reasons, this matter should be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and/or further findings addressing the deficiencies noted above.  Accordingly, the undersigned recommends that:

      1.    Plaintiff's motion for summary judgment (Doc. 13) be granted;

      2.    Defendant's cross-motion for summary judgment (Doc. 14) be denied; and

      3.    The matter be remanded to the agency for further development of the record and further findings, specifically regarding the opinions of Drs. Van Kirk and Wakefield.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


 DATED:  September 2, 2015

**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE

15